# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AGAPITO VAZQUEZ, | ) |
| Plaintiff, | ) Case No. 18 CV 05002 |
| | ) |
| v. | ) Judge Joan B. Gottschall |
| | ) |
| SUNCAST CORPORATION ASCENSION ESPINAL JOSE LEMUS, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Then representing himself, Agapito Vazquez ("Vazquez") filed a six-count complaint against his former employer, Suncast Corporation ("Suncast"), and two of his former supervisors, Ascension Espinal ("Espinal") and Jose Lemus ("Lemus"), alleging employment discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000(e) et seq., and intentional and negligent infliction of emotional distress claims. Defendants filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. The court recruited counsel to represent Vazquez due to the complexity of the issues the motion raised, Vazquez's demonstrated financial inability to pay the filing fee, and his representations to the court that his ability to read, write, and understand English is limited. ECF No. 22. Vazquez's recruited attorney has responded to the motion, ECF No. 28, and defendants have replied, ECF No. 30. For the following reasons, the court grants the motion in part and grants Vazquez leave to replead his dismissed claims.

# I. <u>Summary of the Complaint</u>

On a Rule 12(b)(6) motion, the complaint's well-pleaded facts must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018) (citing *Ball v. City of Indianapolis*, 760 F.3d 636, 642-43 (7th. Cir. 2014)). Suncast, which is located in Batavia, Illinois, hired Vazquez as a machine operator in 1994. Compl. ¶¶ 4, 10, ECF No. 9. In 2013–2014, Vazquez saw Espinal and Lemus sexually harassing a coworker, Woody Swinton,[1] on numerous occasions. Compl. ¶ 12. Vazquez intervened in an incident of "intense escalation" of harassment and verbal abuse perpetrated by Espinal on March 31, 2014. Compl. ¶ 13. Vazquez also filed a complaint with Suncast's Human Resources ("HR") department. Compl. ¶ 13. Suncast's HR director told Vazquez not to discuss the incident with anyone. Compl. ¶ 14. The next day Espinal pulled Vazquez aside, cursed at him, called him a snitch, and told him that he should transfer to another shift if he wanted to keep his job. Compl. ¶ 15. Espinal almost rear-ended Vazquez while he was driving to work on April 2, 2014. Compl. ¶ 16. Vazquez reported this incident to HR, but he was told not to "get excited" and that the HR director had met with his co-workers. Compl. ¶ 17.

A campaign of harassment followed. *See* Compl. ¶¶ 18–22. In retaliation for his reports, Suncast suspended Vazquez on May 14, 2014, for allegedly talking with Swinton. Compl. ¶¶ 18–19. Other employees who reported to Lemus were not disciplined for more serious misconduct. *Id.* Vazquez was "treated like a criminal" in June and July 2014. Compl. ¶ 20. On July 21, 2014, Vazquez filed a charge of discrimination ("charge") with the Equal Employment Opportunity Commission (EEOC). ECF No. 20-1 Ex. A. Vazquez alleged that he

---

[1] Vazquez's charge of discrimination incorrectly identifies Swinton as Woody Long. Resp. to Mot. to Dismiss 1 n.2, ECF No. 28; Charge at 2-3, ECF No. 20-1.

complained about sexual harassment, that he was subsequently disciplined, and that he believed that he had been discriminated against due to his race and in retaliation for reporting protected activity. *Id.* at 3. Vazquez's pro se complaint does not say when Suncast received notice of the charge. The next month, on August 18, 2014, Lemus approached Vazquez and insulted him. Lemus told Vazquez that going to HR would be futile because the company would protect Lemus and because the union would protect Espinal. Compl. ¶ 21. Vazquez reported the incident to HR, and the next day Lemus approached and insulted Vazquez for making the report. Compl. ¶¶ 21, 22. Despite Vazquez's reports to HR, Suncast did nothing to stop the harassment. Compl. ¶ 24. Suncast terminated Vazquez without warning two days later on August 21, 2014. Compl. ¶ 23.

All six counts of the pro se complaint state that they are "Title VII" claims. In Count I Vazquez asserts a hostile work environment and harassment claim against Suncast based on his race and in retaliation for his reports of discrimination and harassment. Compl. ¶ 30. Count II specifically alleges that Suncast suspended Vazquez in retaliation for reporting discriminatory and harassing behavior. Compl. ¶¶ 34, 35. Counts III–VI are pleaded as intentional and negligent infliction of emotional distress claims under Title VII variously against Suncast, Espinal, and Lemus. *See* Compl. 9–13.

## II. Analysis

Suncast raises three contentions regarding Counts I and II. *See* Mem. Supp. Mot. to Dismiss 5–7, ECF No. 20. The first two concern the sufficiency of the allegations of race-based discrimination in Count I and the retaliation claim alleged in Count II. Suncast also asserts that Count I should be dismissed to the extent it pleads a discrimination claim based on Vazquez's termination because he did not timely amend his EEOC charge to allege such a claim.

3

Defendants' Rule 12(b)(6) motion tests the sufficiency of the complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). Under federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the short plain statement must overcome two hurdles. First, the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Id.* Applying this standard, the court concludes that Count I must be dismissed in part but that Count II satisfies federal pleading requirements.

### A. Race Discrimination Claim (Count I)

Title VII prohibits an employer from discriminating against an employee based on the "individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). This claim has four elements: "(1) [the plaintiff] was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016) (citing *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 634 (7th Cir. 2009)).

The complaint does not plausibly allege that the harassment Vazquez endured was based on his race. Paragraph 27 alleges the bare conclusion that Vazquez experienced race-based harassment. This is insufficient because conclusory allegations that merely recite the elements of

a claim must be disregarded when deciding a Rule 12(b)(6) motion. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Vazquez concedes that the complaint does not adequately allege a race harassment claim.[2] Resp. to Mot. to Dismiss 6. Indeed, the complaint does not identify the race or national origin of Vazquez, Swinton, or anyone else. The complaint does allege that supervisors insulted and cursed at Vazquez, but he does not allege or otherwise suggest that they used racially charged language. *See* Compl. ¶¶ 15, 21, 22. Vazquez's race-based harassment claim is therefore dismissed. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345–46 (7th Cir. 1999) (holding that a manager's use of coarse language and manager's cutting employee off in the parking lot were not inherently race-based on the record presented); *Nolan v. City of Chicago*, 2017 WL 569154, at *4 (N.D. Ill. Feb. 13, 2017) (Gottschall, J.) (dismissing race harassment claim for similar reasons).

### B. <u>Retaliation Claim Based On Suspension (Count II)</u>

To state a Title VII retaliation claim, Vazquez must plausibly allege that "he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citing *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015)). Defendants argue that the complaint does not plausibly allege a causal connection between Vazquez's complaints to HR, a presumptively protected activity, and his suspension in May 2014. *See* Mem. Supp. Mot. to Dismiss 6. Defendants also maintain that by pleading the reason given for the suspension, purported video footage showing Vazquez talking to Swinton, the complaint establishes

---

[2] Vazquez's lawyer states in his response that he has learned that "there are unarticulated facts that may be repleaded to demonstrate a pattern of continuous racially discriminatory conduct on behalf of defendant Suncast with particular regard to hiring and promotion practices. However, since none of these acts were brought before the EEOC, said acts are not properly before the [c]ourt with respect to the 'Race Harassment' theory." ECF No. 28 at 6. The court cannot of course consider unpleaded facts.

5

conclusively that Vazquez would have been suspended regardless of his protected activity. *Id.* at 7 (citing *Lance v. Betty Shabazz Int'l Charter Sch.*, 2014 WL 340092, at *7–9 (N.D. Ill. Jan. 29, 2014)).

According to Suncast, Vazquez's retaliation claim is implausible because it is based on the timing of his complaints to HR and his suspension. Defendants cite *Nance v. NBC Universal Media*, 2018 WL 1762440, at *1 (N.D. Ill. Apr. 12, 2018). The court in *Nance* dismissed a retaliation claim based exclusively on allegations that the plaintiff filed an EEOC charge more than two years prior to his termination. *See* 2018 WL 1762440, at *5 (citing *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016)). *Nance* is readily distinguishable for at least three reasons.

First, *Nance* recites the elements of a prima facie case at summary judgment and then says that the complaint fails to allege one of them. *See id.* It is not clear, however, that the plaintiff was required to allege those elements. *See id.* To the extent *Nance* did, the Supreme Court and Seventh Circuit have repeatedly emphasized that the plaintiff does not need to plead the elements of a prima facie case to state a plausible Title VII claim. *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (collecting cases); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

Second, unlike the two-year interval in *Nance*, the one-month interval between Vazquez's protected activity and his suspension, *see* Compl. ¶¶ 17, 18, likely states a plausible retaliation claim. While the plaintiff need not plead evidence needed to make out a prima facie Title VII claim, the complaint must still plausibly allege a causal connection between protected activity and the retaliation. *Carlson*, 758 F.3d at 829. The Seventh Circuit has rejected a "bright-line timing rule" at the pleading stage. *Id.* The length of time for an implausible claim

has nonetheless been described in terms of years, not months: "If the best a plaintiff can do is allege that he engaged in protected activity and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed." *Id.* (citing *Carmody v. Bd. of Trs. of Univ. of Ill.*, 747 F.3d 470, 480 (7th Cir. 2014)). The two-year lapse of time in *Nance* is consistent with this guidance. In light of the Seventh Circuit's guidance, Vazquez's retaliation claim is plausible.

Third, Vazquez's complaint includes considerable additional factual material making his retaliation claim plausible. In addition to the foregoing guidance, the Seventh Circuit warned district courts in *Carlson* not to lose sight of the "bigger picture" when evaluating a complaint. *Carlson*, 758 F.3d at 829. Where the complaint "describe[s] an ongoing campaign of retaliation," the claim's plausibility must be evaluated "through that lens." *Id.* (citing *Warren v. Prejean*, 301 F.3d 893, 900 (8th Cir. 2002)).

Looking at Vazquez's complaint through the proper lens makes his retaliation claim even more plausible. Vazquez describes a campaign of retaliatory behavior beginning in March 2014. After Vazquez reported the sexual harassment he witnessed to HR, Espinal, who was apparently aware of the report, twice threatened Vazquez on April 1 and 2, 2014. Compl. ¶¶ 15, 16. Vazquez reported the threats to HR, but he was brushed aside. Compl. ¶ 17. Vazquez also pleads that he twice demanded to see the purported video footage of him talking with Swinton and yet Suncast personnel refused to show him the video. *See* Compl. ¶ 18, 19. Suncast interprets these allegations as admissions that the footage existed and that Vazquez violated work rules. Mem. Supp. Mot. to Dismiss 7. Inferences must be drawn in Vazquez's, not Suncast's, favor, however. With favorable inferences, Vazquez's requests for the footage are protestations of his factual innocence, and Suncast's evasive responses appear to be pretextual. When all of

7

the facts alleged are viewed in the proper context, Count II states a plausible retaliation claim. *See Carlson*, 758 F.3d at 827. The motion to dismiss Count II is therefore denied.

### C. Exhaustion of Termination-Based Claim

Before filing suit, a Title VII plaintiff must file a charge with the EEOC and receive a right-to-sue letter. *See* 42 U.S.C. § 2000e-5; *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush*, 966 F.2d at 1110 (explaining that this rule accords with the "principle of primary jurisdiction in the agency"). Title VII's charge requirement serves two primary purposes: "it gives the EEOC and the employer a chance to settle the dispute, and it gives the employer notice of the employee's grievances." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015) (citing *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). A Title VII claim falls within the charge's scope so long as "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. At a minimum, the charge and the complaint must both "describe the same conduct and implicate the same individuals." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011) (quoting *Cheek*, 31 F.3d at 501). Nevertheless, the scope of an EEOC charge should be reviewed liberally. *Huri*, 804 F.3d at 831 (citing *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005)); *see also Rush*, 966 F.2d at 1111 (describing the scope of construction as a "lenient standard").

Vazquez filed his charge of discrimination approximately one month before Suncast terminated him. *Compare* Charge 3, ECF No. 20-1 Ex. A, *with* Compl. ¶ 24. The charge did not

anticipate Vazquez's termination. Defendants assert that Vazquez did not amend his charge in time to exhaust a claim based on his August 24, 2014, termination.[3]

The defendants' argument is foreclosed by *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473 (7th Cir. 1996). In *McKenzie*, the Seventh Circuit differentiated between situations in which the retaliation claim arose before the filing of the charge and those that arose after the filing of the original charge. *See id.* at 482–83 (discussing *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534 (7th Cir. 1988)). If the retaliation claim arises after the filing of the charge, "only a single filing [is] necessary to comply with the intent of Title VII; a double filing 'would serve no purpose except to create additional procedural technicalities.'" *Id.* (quoting *Steffen*, 859 F.2d at 545). Indeed, the Seventh Circuit quoted extensively from *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981), which held that a plaintiff need not exhaust a retaliatory discharge claim that arose after the filing of the original charge. *See id.* at 482.

Applying *McKenzie* here, Vazquez did not need to exhaust his retaliation claims based on his termination because he filed his charge of discrimination before Suncast fired him. The Seventh Circuit has held in an unpublished case that for *McKenzie* to apply the charge must still describe the same conduct and implicate the same individuals. *Teymer v. Kraft Foods N. Am., Inc.*, 37 F. App'x 206, 213 (7th Cir. 2002) (citing *Cheek*, 31 F.3d 497, 501 (7th Cir. 1994)). Although it is terse, Vazquez's original charge satisfies this requirement, for it describes the

---

[3] The court can consider the charge at the Rule 12(b)(6) stage without turning the instant motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Defendants attached a copy of Vazquez's charge to its memorandum in support of its motion to dismiss. (ECF No. 20-1 Ex. A.) "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Vazquez refers to his EEOC charging document in his complaint, ECF No. 9 ¶ 9, and he does not dispute the authenticity of the copy in the record. The court therefore considers it without converting the Rule 12(b)(6) motion to a motion for summary judgment. *See, e.g.*, *Flores v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 948 (N.D. Ill. 2015) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (considering charge attached to motion to dismiss where the plaintiff referred to charge in the complaint because "[t]he charge is also central to determining the proper scope of Flores's claims") and *Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 n.5 (N.D. Ill. 1994)). However, the court does not consider the documents attached to Vazquez's response because they are not necessary to the resolution of the instant motion. *See* ECF No. 28.

course of retaliatory conduct allegedly perpetrated by Espinal, Lemus, and HR personnel that Vazquez alleges in his complaint. *See* ECF No. 20-1 at 3. Defendants' motion to dismiss plaintiff's retaliation claims predicated on his termination is denied.

### D. Emotional Distress Claims (Counts III–VI)

The court begins by determining whether the intentional and negligent infliction of emotional distress claims (IIED and NIED respectively) pleaded in Counts III–VI arise under state or federal law. Each count's title begins with either IIED or NIED followed by the phrase "violation of Title VII" and a particular defendant, Suncast, Espinal, and Lemus (an NIED count claim is pleaded against Espinal only). *See* Compl. 9, 10, 11, 12, 13. A complaint filed by an unrepresented plaintiff must be liberally construed. *E.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted). As Title VII claims, the counts against Espinal and Lemus would need to be dismissed because "[t]here is no individual liability under Title VII" for a supervisor who is not the plaintiff's employer. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017) (citing *Geier v. Medtronic, Inc.*, 99 F.3d 238, 244 (7th Cir. 1996)); *see also Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494 (7th Cir. 1998); *Williams v. Banning*, 72 F.3d 552 (7th Cir. 1995). Vazquez concedes as much and urges the court to treat Counts III–VI as Illinois law claims for IIED and NIED. Resp. to Mot. to Dismiss 8–9. Particularly because defendants analyze Counts III–VI alternatively as state law claims, the court liberally construes them as arising under Illinois law. Defendants argue that the Illinois Human Rights Act ("IHRA") preempts Counts III–VI and that those counts are time-barred. The court begins with the IHRA question because, as explained below, it is jurisdictional.

*1. Preemption*

The IHRA gives the Illinois Human Rights Commission "exclusive jurisdiction over claims of civil rights violations." *Mendez v. Perla Dental*, 646 F.3d 420, 422 (7th Cir. 2011) (citing *Blount v. Stroud*, 904 N.E.2d 1, 7 (2009)); *see also* 775 ILCS 5/8–111(C). Illinois courts considering IHRA preemption claims ask whether tort claims are "inextricably intertwined" with IHRA claims; "a claim is inextricably linked with the Act if the Act furnishes the legal duty that the employer is alleged to have violated, such as the duty to refrain from discriminating against or sexually harassing an employee." *Id.* (citing *Blount*, 904 N.E.2d at 8–10).

The Seventh Circuit most recently applied these principles in *Richards v. U.S. Steel*, 869 F.3d 557 (7th Cir. 2017). The *Richards* court stressed that the analysis does not turn on overlapping facts: "the key to preemption is not whether the facts that support a common law tort claim (like intentional infliction of emotional distress) would also support a claim under the Human Rights Act, but rather whether the plaintiff can prove the elements of the tort '*independent* of any legal duties created by the Illinois Human Rights Act.'" *Id.* at 564 (quoting *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. 1997)) (emphasis in original) (other citation omitted). The parties recognize that *Richards* is the leading case, but they do not conduct the analysis it requires.

Vazquez focuses on a procedural detail in *Richards*. He argues that a preemption analysis here would be premature because all federal claims have not been dismissed, and so this court has supplemental jurisdiction over Counts III–VI. ECF No. 28 ¶ 4. If a federal court has original jurisdiction over at least one claim, the court possesses supplemental jurisdiction over state law claims arising from the same case or controversy. 28 U.S.C. § 1367(a). Supplemental jurisdiction may be relinquished, however, in certain circumstances, such as when all claims over

which a federal court has original jurisdiction are dismissed. § 1367(c)(3). The district court in *Richards* did just this when it dismissed the plaintiff's federal law claims as time-barred. *Richards*, 869 F.3d at 560. The plaintiff then refiled his emotional distress claims in state court, and the defendant removed them to federal court. *Id.* But nothing in *Richards*' preemption analysis turned on the presence or absence of federal law claims.

Whatever the source of a federal court's jurisdiction over a state law claim, the federal court cannot exercise jurisdiction if a state court would not have jurisdiction to hear the claim. *See Spahn v. Int'l Quality & Productivity Ctr.*, 211 F. Supp. 2d 1072, 1074 (N.D. Ill. 2002) (Gottschall, J.) (conducting IHRA preemption analysis) (citing *Thomas v. L'Eggs Prods., Inc.*, 13 F. Supp. 2d 806, 808 (C.D. Ill. 1998)). The IHRA triggers this rule by limiting Illinois courts' jurisdiction: "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). Thus, this court must determine whether the IHRA strips Illinois courts of jurisdiction over the emotional distress counts and dismiss for lack of subject matter jurisdiction if it does. *See Richards*, 869 F.3d at 562–63; *Mendez*, 646 F.3d at 422.

Defendants, for their part, turn *Richards*' analysis on its head. They point to paragraphs within Counts III–VI asserting that all of the "foregoing acts" support the IIED and NIED claims. Mem. Supp Mot. to Dismiss 8 (citing Compl. ¶¶ 43, 48, 54, 56). Because these are the "same allegations used to support [plaintiff's] discrimination claims," defendants cite *Richards* and argue that "[w]ithout the facts he uses to support his employment discrimination allegations, [p]laintiff would have no basis for his IIED or NIED claims." *Id.* That may be, but as *Richards* takes pains to emphasize, "[t]he factual overlap between [the plaintiff]'s statutory and emotional-distress claim does not matter . . . as long as [the plaintiff] does not rely on rights or duties

12

created by the Human Rights Act." *Richards*, 869 F.3d at 564–65 (citing *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006)). Defendants do not analyze rights and duties at all; they contend that showing a factual overlap is enough. *See* Mem. Sup. Mot. to Dismiss 8. *Richards* makes quite clear that factual overlap is not the test.

So no party has developed adequately an argument within the analytical framework of *Richards*. This court will not do the parties' legal work for them, particularly where, as here, the complaint alleges a myriad of facts and transactions to be analyzed. *See, e.g., Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel"). In light of the ruling that follows on the statute of limitations, the court need not reach this issue. The motion to dismiss Counts III–VI on preemption grounds is denied.

### 2. *The Statute of Limitations*

The statute of limitations is an affirmative defense. The complaint does not need to anticipate an affirmative defense and plead enough facts to avoid it. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (limitations). A claim may nevertheless be dismissed on a Rule 12(b)(6) motion if the plaintiff pleads himself out of court by "alleging (and thus admitting) the ingredients of the defense" in the complaint. *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) (internal quotation omitted). The court must agree with defendants that Vazquez has pleaded himself out of court.

Illinois' two-year statute of limitations for personal injury claims, 735 ILCS 5/13-202, applies to Vazquez's emotional distress claims. *See Pavlik v. Kornhaber*, 761 N.E.2d 175, 186 (Ill. App. Ct. 1st Dist. 2001) (collecting authority for IIED claims); *In re Afr. Am. Slave Descendants Litig.*, 375 F. Supp. 2d 721, 773 (N.D. Ill. 2005) (NIED claims); *but see Davenport*

*v. Dovgin*, 545 F. App'x 535, 538 (7th Cir. 2013) (holding that Illinois' one-year limitations period for claims against a local government and its employees, 745 ILCS 10/8–101, governed an arrestee's IIED claim against a police officer). The two-year period generally begins running "when the interest at issue is invaded." *Pavlik*, 761 N.E.2d at 186 (citing *Hyon Waste Mgmt. Servs., Inc. v. City of Chicago*, 574 N.E.2d 129, 132 (Ill. App. Ct. 1st Dist. 1991)). The invasion of the interests emotional distress torts protect occurs when the defendant commits the act that allegedly inflicted the emotional distress. *Turner v. McQuarter*, 79 F. Supp. 2d 911, 918 (N.D. Ill. 1999) (citing *Dahl v. Fed. Land Bank Ass'n of W. Ill.*, 572 N.E.2d 311, 314 (Ill. App. Ct. 3rd Dist. 1991)).

Under this rule Vazquez's emotional distress claims accrued at the latest in 2014. The complaint says that the harassment Vazquez witnessed began in 2013, escalated after an incident in or around March 2014, and culminated in Vazquez's termination on August 21, 2014. *See* Compl. ¶¶ 13–24. Vazquez does not identify any act supporting his IIED or NIED claims after that date. *See* Resp. to Mot. to Dismiss 8. Based on the dates given in the complaint, Vazquez's emotional distress claims accrued more than two years before he filed his complaint.

Vazquez submits that the limitations period should be extended (tolled) to account for the time during which the EEOC was considering his charge of discrimination. *Id.* He cites no legal authority supporting his argument. *See id.* As defendants argue in their reply, the Seventh Circuit rejected an indistinguishable argument in *Juarez v. Ameritech Mobile Commc'n, Inc.*, 957 F.2d 317, 322–24 (7th Cir. 1992). The plaintiff in *Juarez* argued that policy considerations favored tolling state tort claims to permit the EEOC to perform its investigation and conciliation functions. *Id.* The Seventh Circuit disagreed because "the possibility that requiring plaintiffs to file their state-law claims within applicable limitations periods will deter recourse to Title VII's

administrative procedures is a 'natural effect' of Congress' decision to make Title VII's remedies separate and independent of those available under state law." *Id.* at 322 (citing *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 461 (1975)); *accord Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 734 (8th Cir. 2018); *Castagna v. Luceno*, 744 F.3d 254, 258 (2d Cir. 2014). *Juarez* requires this court to reject plaintiff's' equitable tolling arguments. *See Juarez*, 957 F.2d at 323 (citing *Arnold v. United States*, 816 F.2d 1306, 1313 (9th Cir. 1987) (refused to toll the limitations period for an IIED claim); *Behn v. Kiewit Infrastructure, Co.*, 2017 WL 5152346, at *2–3 (N.D. Ill. Nov. 7, 2017) (collecting district court decisions dismissing untimely tort claims under *Juarez*). Counts III–VI of the complaint are therefore dismissed.

### III. Conclusion

For the reasons stated, defendant's motion to dismiss is granted in part and denied in part. Count I of the complaint is dismissed insofar as it pleads a harassment claim based on plaintiff's race. Counts III–VI are dismissed as time-barred. If he wishes, plaintiff may file an amended complaint within 28 days.

Date:  June 24, 2019                          /s/
                                              Joan B. Gottschall
                                              United States District Judge