UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AGAPITO VAZQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18 C 5002 |
| | ) | |
| SUNCAST CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Suncast Corporation's Motion for Summary Judgment. For the following reasons, the Court grants Suncast's Motion.

# BACKGROUND

In this action, Plaintiff Agapito Vazquez, a former Suncast employee, alleges that Suncast suspended and later fired him in retaliation for complaining about the alleged sexual harassment of his co-worker Ms. Woody Swinton. Mr. Vazquez's Third Amended Complaint has two counts. The first is a retaliation and hostile work environment Count largely based on Suncast's decision to suspend Mr. Vazquez for three days. *See* Dkt. #55 at 7. The second Count alleges that Suncast fired Mr. Vazquez for complaining about the alleged sexual harassment of Ms. Swinton. *See id.* at 8.

Suncast now moves for summary judgment on both Counts. At the outset, the Court observes that Mr. Vazquez has not followed Local Rule 56.1(a)(3) by not

1

engaging in a line-by-line refutation of Suncast's statement of materials facts. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). So, the Court deems Suncast's factual statements admitted, except to the extent that the record clearly reflects a genuine dispute about Suncast's narrative. *See Levine v. Creditors' Protection Service, Inc.*, 2019 WL 1077126, at *1, n.1 (N.D. Ill. 2019). The following facts emerge against that backdrop.

Defendant Suncast is a plastics manufacturer that previously employed Mr. Vazquez as a forklift driver from 1994 until August 2014. *See* Dkt. #86 at ¶¶ 4, 8. Suncast maintains a corporate policy that prohibits discrimination and retaliation based on protected statuses and activity. *Id.* at ¶ 7. Suncast also has work rules to ensure an orderly workplace. *Id.* at ¶ 21. These work rules include Group A violations, which can result in termination or suspension, and Group B violations, which are less severe and usually result in verbal warnings. *Id.* at ¶ 22. Suncast gives the rules to each employee when they are hired and gives Spanish-speaking employees the rules in Spanish. *Id.* at ¶¶ 23-24.

In March 2014, Mr. Vazquez reported to Suncast that his forklift was broken. *Id.* at ¶ 10. Suncast employees met with Mr. Vazquez to discuss this. *Id.* at ¶ 11. During that meeting, Mr. Vazquez asserted that his coworker, Ms. Swinton, was allegedly being sexually harassed by different Suncast employees. *Id.* at ¶ 13. Suncast had not previously heard about these allegations. *Id.* at ¶ 14.

2

Suncast investigated the allegations. *Id.* at ¶ 16. Suncast then convened a meeting at which the alleged harassers apologized to Ms. Swinton. *Id.* at ¶ 18. Suncast issued these employees a "first and final warning" providing that Suncast would fire them if there were future allegations of inappropriate comments or conduct. *Id.* at ¶ 19. After that meeting, Ms. Swinton made no further allegations and Suncast considered the issue resolved. *Id.* at ¶ 20.

Much of the controversy in this case concerns Work Rule A-9, which prohibits "sleeping or loafing on company time, including the taking of extended rest or meal periods, and leaving assigned places of work without prior authorization." *Id.* at ¶ 31. Suncast disciplined at least 51 employees between 2010 and 2014 for an A-9 violation. *Id.* at ¶ 32. Of the fifty-one employees, forty-one were fired for their first violation. *Id.* Ten employees received lesser discipline. *Id.*

About two months later in May 2014, Suncast learned that Mr. Vazquez and Ms. Swinton were not working, but talking, while they were supposed to be on duty and working. *Id.* at ¶ 36. Mr. Vazquez and Ms. Swinton admitted to not working and Suncast confirmed this with security camera footage. *Id.* at ¶ 37, 39. Suncast determined that they violated Rule A-9. *Id.* at ¶ 38. Suncast then issued Mr. Vazquez and Ms. Swinton written disciplinary actions. *Id.* at ¶¶ 41-43. Even though Suncast had *fired* forty-one other employees for Rule A-9 violations and could fire Mr. Vazquez, Mr. Vazquez was suspended for three days without pay. *Id.* at ¶ 42. After his three-day suspension, Mr.

Vazquez returned to work where he held the same position and rate of pay. *Id.* at ¶ 48. He was not subject to any further disciplinary actions. *Id.*

After that, Mr. Vazquez had repeated interpersonal issues with other coworkers. *Id.* at ¶¶ 49-57. For example, Mr. Vazquez claims that Jose Lemus and Ascension Espinal were treating him "badly" and that coworker Ricardo Vazquez would mock him, claiming Suncast was going to fire him. *Id.* at ¶ 50. Mr. Vazquez also claims that fellow forklift operator, Reuben Contreras, was ignoring him when he did not receive an immediate response from Mr. Contreras to a question he asked him about whether Mr. Vazquez could load a truck with a different product. *Id.* at ¶ 51. Mr. Vazquez's dispute with Mr. Lemus concerned Mr. Vazquez's refusal to train a new temporary worker. *Id.* at ¶ 52. Mr. Vazquez felt that he was being yelled at and complained to Suncast's Human Resources Department. *Id.* at ¶¶ 53-54.

Thereafter, Suncast management held a meeting with Mr. Vazquez and the involved people in August 2014. *Id.* at ¶¶ 58-60. During that meeting, the allegations about Ms. Swinton were never raised. *Id.* at ¶ 60. Suncast even offered to reassign Mr. Vazquez to the Material Control Department to solve the interpersonal issues Mr. Vazquez was having with his co-workers, but Mr. Vazquez refused. *Id.* at ¶ 62. For reasons related to the interpersonal disputes with his co-workers, Mr. Vazquez became upset and stood up to leave. *Id.* at ¶ 64. Mr. Vazquez was told that if he left, Suncast would consider him to be leaving his job at Suncast voluntarily. *Id.* at ¶ 65. Mr. Vazquez

then returned his badge to Suncast management before leaving the facility. *Id.* at ¶ 69. Mr. Vazquez never showed up to work again. *Id.* at ¶ 74.

## **LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding a motion for summary judgment, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011).

## **DISCUSSION**

Before the Court is Suncast's Motion for Summary Judgment on both Counts of Mr. Vazquez's Third Amended Complaint. The Court will address Suncast's Motion on a count-by-count basis.

**1. Count One: Retaliatory Suspension & Retaliatory Harassment**

Count One alleges that Suncast both retaliated against Mr. Vazquez and then subjected him to a hostile work environment because he reported what was happening to Ms. Swinton. Suncast takes issue with both subparts of this claim. The Court will address Suncast's arguments in turn.

**A. Retaliatory Suspension Theory**

"Title VII's anti-retaliation provision provides that it is unlawful for an employer to discriminate against its employee *because* the employee filed a complaint or participated in an investigation of an unlawful employment practice." *Robertson v. Wis. Dep't of Health Servs.,* 949 F.3d 371, 378 (7th Cir. 2020) (citing 42 U.S.C. § 2000e-3(a)) (emphasis added). "To succeed on a Title VII retaliation claim, a plaintiff 'must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [employer] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Id.* (quoting *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) (cleaned up). Suncast's Motion concerns the third element of whether there is a but-for causal connection between Mr. Vazquez's protected reporting and his subsequent three-day suspension.

Here, Suncast is correct that Mr. Vazquez has failed to offer "proof that the desire to retaliate was the but-for cause" of his three-day suspension. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Initially, Suncast is correct that Mr. Vazquez

has not offered *direct* proof in support of his claim. Suncast is also correct that Mr. Vazquez cannot sustain his claim under an indirect approach because he has not offered *evidence* that Suncast treated him "less favorably than similarly-situated employees who did not engage in protected activity." *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 862 (7th Cir. 2015).

At the outset, Mr. Vazquez does not even attempt to rely on a direct method of proving his claims, nor would the record support any such attempt. Direct evidence is evidence that if believed by the trier of fact would "prove the particular fact in question without reliance on inference or presumption." *Hosick v. Chi. State Univ. Bd. of Trustees,* 924 F. Supp. 2d 956, 975 (N.D. Ill. 2013). Here, the evidence viewed in the light most favorable to Mr. Vazquez does not support but-for causation. There is no admission from Suncast, its employees, or agents that it retaliated. Nor is there anything approaching a convincing mosaic of circumstantial evidence that explains Suncast's behavior. Rather, the record reflects that Suncast suspended Mr. Vazquez for not working when he was supposed to be working in violation of Suncast's longstanding Rule A-9.

Suncast is also correct that Mr. Vazquez's claims fare no better under an indirect method of proof because his sources of proof are largely unsupported assertions—not factual details that are supported by evidence capable of being rebutted. Emblematic of this is Mr. Vazquez's opening argument that "the undisputed timing of the events in this litigation is suspect." Dkt. # 88 at 3. Statements like that one are mere hypotheses

7

that might survive a motion to dismiss. But they are not *proof* of anything at the summary judgment stage.

Suncast, by contrast, has credible and uncontroverted proof that it did not retaliate based on aggregate statistics about its across-the-board enforcement of Rule A-9 from 2010 to 2014. Those aggregate statistics show that Suncast disciplined fifty-one other Suncast employees for violating Rule A-9. Suncast even *fired* forty-one of those people for their first violation. Only ten of the fifty-one received the lesser discipline of suspension. Mr. Vazquez was one of those ten.

Nowhere does Mr. Vazquez respond to this factual development. Mr. Vazquez's failure to rejoin Suncast's statistical compilation is problematic for two reasons. First, the lack of a response means the Court deems those facts admitted under Local Rule 56.1. And second, Mr. Vazquez's response brief itself does not even attempt to rejoin Suncast's factual narrative, so Mr. Vazquez has forfeited any possible response. *See Herbert v. JPMorgan Chase Bank*, N.A., 2016 WL 245570, at *3 (N.D. Ill. 2016) (collecting cases supporting forfeiture where a summary judgment response brief does not address the movant's "legal and factual arguments for summary judgment on the retaliation claims.")

The aggregate Suncast statistics prevent a reasonable factfinder from concluding that Suncast suspended Mr. Vazquez because he reported sexual harassment. This is true because the only reasonable inference from Suncast's uncontroverted statistics is that Suncast was enforcing its no-loafing policy throughout the years and was just doing

that here. These statistics also show that Mr. Vazquez got off easier than other Rule A-9 violators since Suncast suspended him, even though they could have fired him. This cuts firmly against Mr. Vazquez's ability to show that anything underhanded took place. Now, if Suncast suspended everyone else, but fired Mr. Vazquez, we might have a different case. But that is not the case presently before the Court.

Mr. Vazquez's identification of other alleged Rule A-9 violators does give the Court some pause. But Mr. Vazquez's unsubstantiated assertions fall short because they do not establish that Suncast knew of other Rule A-9 violators, but chose to do nothing about it. Thus, summary judgment is improper because Mr. Vazquez must point directly to the conclusion that an employer was illegally motivated, without reliance on speculation. *See Langenbach v. Wal–Mart Stores, Inc.*, 761 F.3d 792, 800 (7th Cir.2014); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (describing cases where an employee's subjective belief that an employer took adverse employment action based on a protected category was insufficient to create an issue of material fact).

Unpacking Mr. Vazquez's Opposition arguments makes this plain. Mr. Vazquez begins by asserting that the "Suncast Work Rules were not applied the same for everybody." Exh. A, p. 86. But a statement like that one is inherently unfalsifiable because it is a mere claim without a warrant articulating *why* the claim is true. *See id.* Mr. Vazquez likewise proclaims that his three-day suspension "was an intimidation tactic, illogical, and applied for a rule that everyone violated." But the Court lacks a

vehicle to verify this statement's veracity on similar grounds. *See id.* Put simply, there is no factual basis for imputing a purpose to Suncast.

Paragraphs 18 and 19 of Mr. Vazquez's *Statement of Additional Facts* get closer to a genuine dispute of material fact, but still miss the mark. In these paragraphs, Mr. Vazquez declares that "[o]ther Suncast employees were not suspended for the same or worse behavior," including Ascension Espinal. The problem is that Mr. Vazquez admitted that he did not know whether there were work-related reasons for the conduct he witnessed or whether Suncast was even aware of those alleged violations. The record also reflects that Mr. Vazquez admitted that he has nothing more than his personal belief that Suncast was ignoring these violations by other employees.

Getting around Suncast's statistical approach may have not been impossible, but the briefing before the Court fails to surmount it. For example, Mr. Vazquez's Opposition argues that additional "questions of fact surround why" the conversation between Mr. Vazquez and Ms. Swinton "was flagged, why it was initially preserved beyond its longevity of about a week, and why the footage no longer exists when an EEOC complaint and lawsuit was filed against Suncast shortly thereafter." The problem for Mr. Vazquez is that at this point in the litigation he should have some answers. That is why the American legal system allows such broad civil discovery.

Other questions that we do not yet know the answer to might also be helpful. For example, how common is the behavior that Suncast punished Mr. Vazquez for? And had other employees subject to discipline also complained about workplace infractions?

10

Did Suncast know that other employees stepped away from their work stations? But, in the end, the Court has been presented with no evidence tying Mr. Vazquez's harassment complaint with his suspension. Nor is there evidence that Suncast was unfairly enforcing the rule when they *knew* of violations. So, the Court grants summary judgment to Suncast on this Count.

Our approach to this Count is consistent with the Seventh Circuit's method in *Alexander v. Wisconsin Department of Health and Human Services*. There, the Seventh Circuit upheld the district court's grant of summary judgment where a plaintiff's employer suspended the plaintiff twice, one for five days and once for ten days, before firing the plaintiff. 263 F.3d 673, 677 (7th Cir. 2001). In upholding summary judgment, the Seventh Circuit considered, among other things, the fact that five-day and ten-day suspensions were not "unusually severe" or "harsh" for the conduct at issue, which weighs against a finding that there was a pretext for discrimination. *Id.* at 684-86. The Seventh Circuit also reasoned in pertinent part that the company's application of its disciplinary policy cut against a conclusion that the second suspension was a "pretext for racial discrimination." *Id.* at 686. That disciplinary policy allowed the employee to be fired for a second disciplinary infraction. *Id.* But the employer did not fire the employee: the employer instead issued a second, ten-day, non-pretextual suspension. *Id.*

Like in *Alexander*, Mr. Vazquez's three-day suspension was neither unusually severe, nor harsh and Suncast was merely enforcing an across-the-board disciplinary

policy. And, in the end, the "critical point" is that Mr. Vazquez has not "offer[ed] evidence that would allow the factfinder to conclude that" Suncast suspended him because he reported that Ms. Swinton's harassment. *Pierri v. Medline Indus., Inc.*, 970 F.3d 803, 808 (7th Cir. 2020). So, summary judgment is also appropriate here.

### B. Retaliatory Harassment Theory

Count I also alleges that Suncast retaliated against Mr. Vazquez by creating an objectively hostile work environment. To prevail on this type of retaliatory harassment claim, Mr. Vazquez must establish (1) he was subject to unwelcome harassment; (2) the harassment was *because of* his protected activity; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *See Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005). Suncast is correct that Mr. Vazquez's claim fails at least because of the lack of but-for causation and because the harassment was insufficiently severe or pervasive under Seventh Circuit precedent.

At the outset, Suncast made both of these arguments clear in its Motion, which was supported by its Local Rule 56.1 Statement. Mr. Vazquez did not refute these arguments in either his Opposition or his document styled as a *Statement of Additional Facts.* So, he forfeits any possible response. *Raymond*, 442 F.3d at 608; *Herbert,* 2016 WL 245570, at *3. Forfeiture aside, the Court finds that summary judgment is also substantively proper.

First, like with Count I, Mr. Vazquez principally cannot show that the alleged indignities he suffered are because he reported harassment. Rather, the record reflects that the disputes "had nothing to do with Ms. Swinton or Plaintiff's complaints about the harassment of Ms. Swinton." Dkt. #86 at ¶ 57. For example, the undisputed record shows that Mr. Vazquez did not "connect his interpersonal issues with his co-workers to Ms. Swinton" during the meeting that resulted in his quitting. *See* Dkt. #86-2 at ¶¶ 65-66; *see also Vazquez Dep.* 73:10-13, 75:8-11.

Second, Mr. Vazquez also does not respond to Suncast's legal arguments demonstrating that the workplace environment was insufficiently severe or pervasive such that it altered the conditions of his employment or created a hostile or abusive atmosphere. Generally, a "limited number of incidents," like using vulgar language, cursing, yelling, and making isolated comments, might reflect "run of the mill uncouth behavior" but it "fall short[s] of an objectively offensive work environment." *Racicot*, 414 F.3d at 678.

Under these principles, the record fails to establish a basis for a reasonable jury to conclude that Suncast subjected Mr. Vazquez to an objectively offensive workplace environment. The allegations that "multiple people ignored him" and that "people in supervisory positions refused to return his greetings after" he reported harassment might constitute rude behavior at worst, but they are ultimately unactionable petty workplace slights. *See Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (holding that "rude or impolite interactions" are insufficient to support a claim for

hostile work environment); *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 625–26 (7th Cir. 2004) (similar). The allegation that Jose Lemus, his supervisor's assistant "yell[ed] at him on the workplace floor" also falls short in its severity. *See Racicot*, 414 F.3d at 678. Mr. Vazquez also describes that Vazquez was not offered options in Spanish about "possible alterations to the increasingly hostile work environment." But that allegation is unsubstantiated speculation that fails to clear the hurdles necessary for prevailing on a retaliatory harassment theory.

At bottom, Mr. Vazquez's allegations are a "mishmash of complaints" about his co-workers rather than evidence of a workplace "permeated with intimidation, ridicule, and insult." *Boss*, 816 F.3d at 920. Not to mention that the Seventh Circuit has upheld grants of summary judgment for workplaces much worse than those here. For example, in *Moser v. Indiana Department of Corrections*, the Seventh Circuit held that a plaintiff's allegations that another employee engaged in a "daily non-ceasing quest to denigrate" female employees, which included incidents in which he "spoke down to her and other female employees," "made a reference to her 'tits,'" made various juvenile remarks or jokes about penises, and "told several new male employees to watch out because Ms. Moser likes good-looking men," did not rise to the level of creating an objectively hostile work environment. 406 F.3d 895, 903 (7th Cir. 2005). Likewise, the Seventh Circuit has even affirmed summary judgment where a plaintiff, for example, was referred to as a "black mother f-er" outside of his presence or was called a "black

n----r" once. *See Boss v. Castro*, 816 F.3d 910, 921 (7th Cir. 2016) (collecting cases). It follows that where conduct is less severe, like here, summary judgment is also proper.

The record also reflects that the conditions of Mr. Vazquez's employment did not change. Rather, the record reflects that after his three-day suspension, Mr. Vazquez returned to work "at the same rate of pay, in the same position and on the same shift." Dkt. #86 at ¶ 48. It also reflects that Mr. Vazquez was not subject to any other disciplinary action for the remainder of his employment with Suncast." *Id.*

So, for the reasons put forth by Suncast and not refuted by Mr. Vazquez, the Court also grants Suncast summary judgment on this Count.

**2. Count Two: Retaliatory Discharge**

To prove a claim for retaliatory discharge, Mr. Vazquez must show that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) that the protected activity was the *but-for* reason for his termination. *See Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020). As with the other claims, Mr. Vazquez's retaliatory discharge claim fails because he has not provided any evidence of but-for causation.

Here, the record shows that Mr. Vazquez left Suncast due to disagreements with his co-workers, not because he reported any protected activity. Indeed, it is undisputed that the August 21, 2014 meeting was set to discuss interpersonal issues Plaintiff was having with Jose Lemus and Ruben Contreras. Those interpersonal issues had nothing to do with Mr. Vazquez's protected activity.

Adding to this is Suncast's argument that the timing between the protected activity and his alleged discharge preclude a genuine issue of material fact. Here, the only protected activity was Mr. Vazquez's March 2014 complaint about the alleged harassment of Ms. Swinton, but his alleged retaliatory discharge took place on August 21, 2014—nearly five months later. That time distance means Mr. Vazquez cannot establish but-for causation. *See, e.g., Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (a four-month lapse in time between the protected activity and the adverse employment action "is counter-evidence of any causal connection."); *Davidson v. Midelfort Clinic, Ltd.*, 133 F. 3d 499, 511 (7th Cir. 1998) (similar); *Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (similar). Unfortunately, Mr. Vazquez's Response does not fulsomely address—nor does it even have a heading—addressing Suncast's arguments on these points. So, the Court reiterates its forfeiture finding discussed above. *See Raymond*, 442 F.3d at 608; *Hebert,* 2016 WL 245570, at *3. And, substantively, the Court finds that the almost five-month delay is persuasive counterevidence that prevents a reasonable jury from finding for Mr. Vazquez on this record.

For these reasons, the Court also grants summary judgment on this Count. Even after construing the materials facts in the light most favorable to Mr. Vazquez as we must, *Sweatt v. Union Pacific R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015), the Court finds that no reasonable jury could find for Mr. Vazquez.

## **CONCLUSION**

For the preceding reasons, the Court grants Suncast's Motion for Summary Judgment. Civil case terminated. It is so ordered.


Dated: 7/15/2021

_____
Charles P. Kocoras
United States District Judge